JONATHAN E. NUECHTERLEIN
GENERAL COUNSEL

MATTHEW H. WERNZ
mwernz@ftc.gov
Federal Trade Commission
55 West Monroe Street, Suite 1825
Chicago, Illinois 60603
Tel: (312) 960-5634; Fax: (312) 960-5600

RAYMOND E. MCKOWN (Cal. Bar No. 150975)
rmckown@ftc.gov
Federal Trade Commission
10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
Tel: (310) 824-4343; Fax: (310) 824-4380

Attorneys for Plaintiff
FEDERAL TRADE COMMISSION



UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

FEDERAL TRADE COMMISSION,

     Plaintiff,

     v.

SALE SLASH, LLC, a California
limited liability company,

PURISTS CHOICE LLC, a California
limited liability company,

ARTUR BABAYAN, individually and
as an owner and manager of SALE
SLASH, LLC and PURISTS CHOICE
LLC, and

CV15-03107PA (AJWx)

Case No. _____

Plaintiff's *Ex Parte* Application for
Temporary Restraining Order with an
Asset Freeze, Appointment of a
Receiver, and Other Equitable Relief,
and Order to Show Cause Why a
Preliminary Injunction Should Not Issue



1

VAHE HAROUTOUNIAN,
individually and doing business as
PRISMA PROFITS,

        Defendants.

Plaintiff, the Federal Trade Commission ("FTC"), having filed its Complaint seeking a permanent injunction and other relief, including restitution for consumers injured by Defendants' unlawful practices, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and Section 7(a) of the Controlling the Assault of Non-Solicited Pornography and Marketing Act of 2003 ("CAN-SPAM Act"), 15 U.S.C. § 7706(a), applies to this court on an *ex parte* basis without notice to Defendants for a Temporary Restraining Order with an Asset Freeze, Appointment of a Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO").[1]  In support of this application, the FTC states:

1.     The FTC seeks an order:

    a.     Temporarily restraining Defendants from further violations of Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and Section 5(a) of the CAN-SPAM Act, 15 U.S.C. § 7704(a);

    b.     Temporarily freezing Defendants' assets;

---

[1]    The FTC has filed a proposed TRO concurrently with this application.

c.      Appointing a temporary equity receiver to take control of corporate Defendants Sale Slash, LLC and Purists Choice LLC and their assets;

d.      Temporarily restraining and enjoining Defendants from destroying or concealing documents, and from transferring, concealing, or otherwise disposing of assets;

e.      Temporarily requiring third parties holding Defendants' assets to retain within their control and prohibit the withdrawal, removal, assignment, transfer, pledge, or other disposal of any of Defendants' assets, funds, documents or other property held by, or under the control of third parties;

f.      Granting expedited discovery; and

g.      Requiring Defendants to show cause why this Court should not issue a preliminary injunction extending such temporary relief pending an adjudication on the merits.

2.      *Ex parte* relief is necessary here.  An *ex parte* TRO is warranted where the facts show that irreparable injury, loss, or damage will result before the defendant can be heard in opposition.  *See* Fed. R. Civ. P. 65(b).  In other cases in this district and circuit, Courts have granted the FTC an *ex parte* TRO with an asset freeze and appointment of a receiver based on Defendants' deceptive acts and

practices.[2]  As in those cases, irreparable injury, loss, or damage likely will result if Defendants receive notice of this action.

3.      In the FTC's experience, defendants engaged in similarly deceptive schemes have withdrawn funds from bank accounts and moved or destroyed inculpatory documents when given notice of the FTC's action against them.[3]

4.      In this case, the deceptive and illegal nature of Defendants' online marketing practices and the steps they have taken to conceal their identities suggest that they are likely to dissipate assets or destroy documents if given notice of the FTC's action before the entry of a TRO.  As explained in detail in the FTC's memorandum and the supporting exhibits filed with this application, Defendants have inundated consumers with illegal spam email, false weight-loss claims, and phony celebrity endorsements.  Defendants' intial email falsely suggests it is from a friend, family member, or other contact of the recipient.  These emails contain

---

[2]      *See, e.g., FTC v. Applied Mktg. Servs., LLC*, CV-13-6794-CAS (CWx) (Sept. 16, 2013) (*ex parte* TRO with asset freeze, appointment of a receiver, immediate access to business premises); *FTC v. Asset & Capital Mgmt. Group, Inc.*, CV-13-5267-DSF (JCx) (July 24, 2013) (same); *FTC v. Am. Mortgage Consulting Group*, LLC, SACV-12-01561-DOC (JPRx) (Sept. 18, 2012) (same); *FTC v. Rincon Mgmt. Servs. LLC*, CV-11-01623-VAP (SPx) (Oct. 11, 2011) (same); *FTC v. Forensic Case Mgmt. Servs., Inc.*, CV-11-07484-RGK (SSx) (Sept. 13, 2011) (same); *FTC v. U.S. Homeowners Relief, Inc.*, CV-10-01452-JST (PJWx) (Sept. 28, 2010) (same).

[3]      *See* Certification and Declaration of Plaintiff's Counsel Pursuant to Federal Rule of Civil Procedure 65(b) and Local Rule 7-19.2 in Support of Plaintiff's *Ex Parte* Application for Temporary Restraining Order and *Ex Parte* Application to Temporarily Seal the Case File, filed with this application.

innocent-looking links that lead to "fake news" websites where a phony news report claims that Defendants' products cause dramatic weight loss and celebrities like Oprah Winfrey endorse those same products.  These websites also have links that lead deceived consumers to webpages where they can purchase Defendants' products.  In truth, the spam email was sent by hackers, the weight-loss claims are bogus, and the celebrity endorsements are simply made up.  Defendants have made millions from this scheme, paying more than $17 million to marketers to perpetrate the deception on Defendants' behalf.  Meanwhile, Defendants have attempted to conceal their identities, falsifying website registration records and registering their corporates through mail drops.  Without an *ex parte* asset freeze, funds may not be available to satisfy a final order granting restitution to defrauded consumers.

//

//

//

//

//

//

//

//

//

WHEREFORE, Plaintiff Federal Trade Commission respectfully requests that the Court grant its Application *ex parte* and waive notice of this Application to Defendants.

Respectfully submitted,

Jonathan E. Nuechterlein
General Counsel

Dated:  April 24, 2015

Matthew H. Wernz, IL Bar #6294061
Attorney for Plaintiff
FEDERAL TRADE COMMISSION

6