1 | JONATHAN E. NUECHTERLEIN
2 | GENERAL COUNSEL



3 | MATTHEW H. WERNZ
4 | mwernz@ftc.gov
Federal Trade Commission
5 | 55 West Monroe Street, Suite 1825
6 | Chicago, Illinois 60603
Tel: (312) 960-5634; Fax: (312) 960-5600
7 |
8 | RAYMOND E. MCKOWN (Cal. Bar No. 150975)
rmckown@ftc.gov
9 | Federal Trade Commission
10 | 10877 Wilshire Boulevard, Suite 700
Los Angeles, California 90024
11 | Tel: (310) 824-4343; Fax: (310) 824-4380
12 |
13 | Attorneys for Plaintiff
FEDERAL TRADE COMMISSION
14 |
15 | UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
16 |
17 | FEDERAL TRADE COMMISSION,          Case No. CV15-03107 PA (AJWx)
18 |          Plaintiff,               [Proposed]
19 |      v.                           Preliminary Injunction
20 |
21 | SALE SLASH, LLC, a California      Hearing Date: May 11, 2015
limited liability company, et al.,    Time: 1:30 p.m.
22 |                                    Place: Courtroom 15, United States
23 |          Defendants.              Courthouse, 312 North Spring Street
Los Angeles, CA
24 |

25 | This Court, having considered the Preliminary Injunction ("Order"), the

26 | filings by the Federal Trade Commission ("FTC") in support of the Order, and the

27 | other filings in this case, and for other cause appearing, hereby orders that:

Page 1 of 44

## FINDINGS OF FACT

1.      This Court has jurisdiction over the subject matter of this case and over Defendants.

2.      Venue in this district, process, and service of process are proper.

3.      There is good cause to believe that Defendants Sale Slash, LLC, a California limited liability company, Purists Choice LLC, a California limited liability company, Artur Babayan, and Vahe Haroutounian have engaged and are likely to continue to engage in acts or practices that violate Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) & 52, and Section 5(a) of the CAN-SPAM Act, 15 U.S.C. § 7704(a), and that the FTC is therefore likely to prevail on the merits of this action.

4.      There is good cause to believe that consumers will suffer immediate and continuing harm from Defendants' ongoing violations of Section 5(a) and 12 of the FTC Act and Section 5(a) of the CAN-SPAM Act unless Defendants are restrained and enjoined by order of this Court.

5.      There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and/or disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendants of their assets or business records unless Defendants are immediately restrained and enjoined by order of this

Court.  Therefore, there is good cause for an asset freeze and the appointment of a

permanent receiver over the Corporate Defendants;

6.      Weighing the equities and considering the FTC's likelihood of

ultimate success, this Order is in the public interest.

7.      No security is required of any agency of the United States for issuance

of a preliminary injunction, Fed. R. Civ. P. 65(c).

### DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

1.      **"Asset"** or **"Assets"** means any legal or equitable interest in, right to,

or claim to, any real or personal property, including, but not limited to, "goods,"

"instruments," "equipment," "fixtures," "general intangibles," "inventory,"

"checks," or "notes" (as these terms are defined in the Uniform Commercial

Code), lines of credit, chattels, leaseholds, contracts, mail or other deliveries,

shares of stock, lists of consumer names, accounts, credits, premises, receivables,

funds, and all cash, wherever located.

2.      **"Assisting others"** includes, but is not limited to: (a) performing

customer service functions, including, but not limited to, receiving or responding

to consumer complaints; (b) formulating or providing, or arranging for the

formulation or provision of, any sales script or other marketing material;

(c) providing names of, or assisting in the generation of, potential customers;

(d) performing or providing marketing or billing services of any kind; (e) acting as an officer or director of a business entity; (f) hosting websites; or (g) processing payments.

3.     **"Clear and conspicuous"** and **"clearly and conspicuously"** means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication, even if the representation requiring the disclosure is made in only one means.

b.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

e.  The disclosure must use diction and syntax understandable to ordinary consumers and must appear in each language in which the representation that requires the disclosure appears.

f.  The disclosure must comply with these requirements in each medium through which it is received, including all electronic devices and face-to-face communications.

g.  The disclosure must not be contradicted or mitigated by, or inconsistent with, anything else in the communication.

4.  **"Commercial electronic mail message"** (or **"commercial email"**) means any electronic mail message the primary purpose of which is the commercial advertisement or promotion of a commercial product or service (including the content on an Internet website operated for commercial purposes). 15 U.S.C. § 7702(2).

5.  **"Competent and reliable scientific evidence"** means tests, analyses, research, or studies that have been conducted and evaluated in an objective manner by qualified persons and are generally accepted in the profession to yield accurate and reliable results.

6.  **"Corporate Defendants"** or **"Receivership Defendants"** means Sale Slash, LLC, a California limited liability company, and Purists Choice LLC, a California limited liability company, and their successors and assigns, as well as

any subsidiaries, and any fictitious business entities or business names created or used by these entities.

7.    **"Covered Product"** means any dietary supplement, food, or drug, including, but not limited to, Premium Green Coffee, Premium Raspberry Ketone, Pure Caralluma Fimbriata Extract, Pure Forskolin Extract, Pure Garcinia Cambogia, Pure Garcinia Cambogia HCA, Pure Saffron, and Pure White Kidney Bean Extract.

8.    **"Defendants"** means all of the Individual Defendants and the Corporate Defendants, individually, collectively, or in any combination.

9.    **"Document"** or **"Documents"** means any materials listed in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form. A draft or non-identical copy is a separate document within the meaning of the term.

10.    **"Financial Institution"** means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

11. **"Header Information"** means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message. 15 U.S.C. § 7702(8).

12. **"Individual Defendants"** means Artur Babayan and Vahe Haroutounian, or by whatever other name each may be known.

13. **"Initiate,"** when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message. 15 U.S.C. § 7702(9).

14. **"Person"** means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

15. **"Plaintiff," "Commission,"** or **"FTC"** means the Federal Trade Commission.

16. **"Procure,"** when used with respect to the initiation of a commercial electronic mail message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf. 15 U.S.C. § 7702(12).

17.   **"Receivership Defendants"** means Sale Slash, LLC, a California limited liability company and Purists Choice LLC, a California limited liability company, and their successors and assigns, as well as any subsidiaries, affiliates, divisions, or sales or customer service operations, and any fictitious business entities or business names created or used by these entities, including, but not limited to, Apex Customer Care LLC, a California limited liability company, E-Level Marketing Inc., a California corporation, Future DNA LLC, a California limited liability company, Geneva Shox LLC, a California limited liability company, Genix Marketing LLC, a California limited liability company, Lead Kings LLC, a California limited liability company, Optim Products LLC, a California limited liability company,  Penway LLC, a California limited liability company, Renvee LLC, a California limited liability company, and Vita Fuse LLC, a California limited liability company.

18.   **"Sender"** means a person who initiates a commercial electronic mail message and whose product, service, or Internet website is advertised or promoted by the message.  15 U.S.C. § 7702(16).

19.   **"TRO"** means the *Ex Parte* Temporary Restraining Order with an Asset Freeze, Appointment of a Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue entered by this Court on April 27, 2015.

# I.

## **PROHIBITED WEIGHT-LOSS CLAIMS**

**IT IS ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby restrained and enjoined from making, or assisting others in making, directly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, that:

A.      Such Covered Product causes, or assists in causing, weight loss, or any specific amount of weight loss;

B.      Such Covered Product causes, or assists in causing, rapid weight loss; or

C.      Consumers who use the Covered Product can generally expect to achieve the weight loss results represented by an endorser of such Covered Product;

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence, as that term is defined above, that is sufficient in quality and quantity

based on standards generally accepted in the scientific fields, when considered in light of the entire body of relevant and reliable scientific evidence, to substantiate the representation is true.

## II.

## PROHIBITED MISREPRESENTATIONS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, or sale of any Covered Product, are hereby restrained and enjoined from misrepresenting, or assisting others in misrepresenting, directly or indirectly, expressly or by implication, any material fact, including, but not limited to, that Defendants' products are or have been used, endorsed, or approved by specifically identified celebrities such as Oprah Winfrey and The Doctors television show.

## III.

## PROHIBITIONS AGAINST
## COMMERCIAL EMAIL MISREPRESENATIONS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or

participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, or sale of any product, service, or program, are hereby restrained and enjoined from initiating the transmission of a commercial email that:

     A.    Contains, or is accompanied by, materially false or materially misleading header information, including but not limited to:

          1.    an originating electronic mail address, domain name, or Internet Protocol address when the access to such originating electronic email address, domain name or Internet Protocol address was obtained by means of false or fraudulent pretenses or representations; or

          2.    a "from" line (the line identifying or purporting to identify the person initiating the messages) that does not accurately identify any person who initiated the message; or

     B.    Contains a subject heading likely to mislead recipients, acting reasonably under the circumstances, about material facts regarding the contents or subject matter of the message.

## IV.

### PROHIBITIONS AGAINST
### OPT-OUT AND POSTAL ADDRESS VIOLATIONS

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any corporation, subsidiary, division, or other device, in connection with the advertising, marketing, promotion, offering for sale, or sale of any product, service, or program, are hereby restrained and enjoined from initiating the transmission of a commercial email that:

A.      Does not include a clear and conspicuous notice of the recipient's opportunity to decline to receive further commercial electronic mail messages from the sender at the recipient's electronic mail address and describes the means by which the recipient can decline to receive future commercial email messages from the sender;

B.      Does not include a functioning return electronic mail address or other Internet-based mechanism, clearly and conspicuously displayed, that a recipient can use to submit a reply electronic mail message or other form of Internet-based communication requesting not to receive future commercial electronic mail messages from the sender at the electronic mail address where the message was received, and that remains capable of receiving such messages or communications for no less than 30 days after the transmission of the original message;

C.      Does not include the sender's valid physical postal address; or

D.    Is sent to a recipient's email address, more than 10 days after the

sender receives a request from that email recipient not to receive future

commercial electronic mail messages from the sender at the recipient's electronic

mail address.

## V.

## ASSET FREEZE

**IT IS FURTHER ORDERED** that Defendants and their officers, agents,

servants, employees, attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order by personal

service or otherwise, whether acting directly or through any trust, corporation,

subsidiary, division, or other device, except as provided herein, as stipulated by the

parties, or as directed by further order of the Court, are hereby restrained and

enjoined from:

A.    Transferring, liquidating, converting, encumbering, pledging, loaning,

selling, concealing, dissipating, disbursing, assigning, spending, withdrawing,

granting a lien or security interest or other interest in, or otherwise disposing of any

funds, real or personal property, accounts, contracts, shares of stock, lists of

consumer names, or other assets, or any interest therein, wherever located,

including outside the territorial United States, that are:

1. Owned, controlled, or held by, in whole or in part, for the benefit of, or subject to access by, or belonging to, any Defendant;

2. In the actual or constructive possession of any Defendant; or

3. In the actual or constructive possession of, or owned, controlled, or held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or any other entity directly or indirectly owned, managed, or controlled by, or under common control with, any Defendant, including, but not limited to, any assets held by or for any Defendant in any account at any bank or savings and loan institution, or with any credit card processing agent, automated clearing house processor, network transaction processor, bank debit processing agent, customer service agent, commercial mail receiving agency, or mail holding or forwarding company, or any credit union, retirement fund custodian, money market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

B. Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant, or subject to access by any Defendant or under any Defendant's control, without providing the

Commission prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Section;

C.      Cashing any checks or depositing or processing any payments from customers or clients of Defendants;

D.      Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant; or

E.      Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

*Provided further*, that the assets affected by this Section shall include: (1) all assets of Defendants as of the time this Order is entered; and (2) for assets obtained after the time this Order is entered, those assets of Defendants that are derived, directly or indirectly, from the Defendants' activities related to the marketing or sale of any Covered Product, including the activities of any Receivership Defendant.

This Section does not prohibit transfers to the Permanent Receiver, as specifically required in Section X.D (Delivery of Receivership Property), nor does it prohibit the repatriation of foreign assets, as specifically required in Section XII (Repatriation of Assets and Documents) of this Order.

# VI.

## DUTIES OF THIRD PARTIES HOLDING DEFENDANTS' ASSETS

**IT IS FURTHER ORDERED** that any financial institution, business entity, or person maintaining or having custody or control of any account or other asset of any Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

A.     Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

1.     On behalf of, or for the benefit of, any Defendant or any other Person subject to Section V above;

2.     In any account maintained in the name of, or for the benefit of, or subject to withdrawal by, any Defendant or other Person subject to Section V above; and

3.     That are subject to access or use by, or under the signatory power of, any Defendant or other Person subject to Section V above;

B.     Deny Defendants access to any safe deposit boxes or storage facilities that are either:

1.     Titled in the name, individually or jointly, of any Defendant, or other Person subject to Section V above; or

2.     Subject to access by any Defendant or other Person subject to Section V above;

C.     Within five (5) days of the date of service of this Order, provide Plaintiff a sworn statement setting forth:

1.     The identification number of each account or asset titled in the name, individually or jointly, of any Defendant, or held on behalf of, or for the benefit of, any Defendant or other Person subject to Section V above, including all trust accounts managed on behalf of any Defendant or subject to any Defendant's control;

2.     The balance of each such account, or a description of the nature and value of such asset;

3.     The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant or other Person subject to Section V above, whether in whole or in part; and

4.      If the account, safe deposit box, storage facility, or other asset has been closed or removed, the date closed or removed and the balance on said date;

D.      Within five (5) days of a request from any Plaintiff, provide Plaintiff copies of all records or other documentation pertaining to each such account or asset, including, but not limited to, originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.      This Section VI shall apply to existing accounts and assets, assets deposited or accounts opened after the effective date of this Order, and any accounts or assets maintained, held or controlled three years prior to the effective date of this Order.  This Section VI shall not prohibit transfers in accordance with any other provision of this Order, any further order of the Court, or by written agreement of the parties.

## VII.

## MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal

service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

    A.    Failing to create and maintain books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, fairly and completely reflect the incomes, disbursements, transactions, dispositions, and uses of the Defendants' assets;

    B.    Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically-stored materials, that relate in any way to the business practices or business or personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

    C.    Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, email address, and website address of the

business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## VIII.

## PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A.     Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiff's Complaint; and

B.     Benefiting from or using the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal

information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiff's Complaint.

*Provided, however*, that Defendants may disclose such financial or identifying personal information to a law enforcement agency or as required by any law, regulation, or court order.

## IX.

## FINANCIAL STATEMENTS

**IT IS FURTHER ORDERED** that, unless previously submitted in full compliance with the TRO, each Defendant shall serve upon counsel for Plaintiff, no later than five (5) business days after entry of this Order, a completed financial statement accurate as of the date of entry of this Order, on the forms served on Defendants with the TRO for Individual Defendants and for Corporate Defendants, as the case may be, signed under penalty of perjury.

The financial statements shall include assets held outside the territory of the United States, shall be accurate as of the date of the entry of this Order, and shall be verified under oath. Defendants shall attach to these completed financial statements copies of all local, state, provincial, and federal income and property tax returns, with attachments and schedules, as called for by the instructions to the financial statements.

# X.

## PERMANENT RECEIVER

### A.    APPOINTMENT OF PERMANENT RECEIVER

**IT IS FURTHER ORDERED** that Robb Evans and Associates, LLC is

appointed Permanent Equity Receiver ("Receiver") for Receivership Defendants

and any of their affiliates, subsidiaries, divisions, or sales or customer service

operations, wherever located, including, but not limited to, Apex Customer Care

LLC, a California limited liability company, E-Level Marketing Inc., a California

corporation, Future DNA LLC, a California limited liability company, Geneva

Shox LLC, a California limited liability company, Genix Marketing LLC, a

California limited liability company, Lead Kings LLC, a California limited liability

company, Optim Products LLC, a California limited liability company,  Penway

LLC, a California limited liability company, Renvee LLC, a California limited

liability company, and Vita Fuse LLC, a California limited liability company, with

the full power of an equity receiver.  The Receiver shall be the agent of this Court,

and solely the agent of this Court, in acting as Receiver under this Order.  The

Receiver shall be accountable directly to this Court.  The Receiver shall comply

with all Local Rules of this Court governing receivers.

**B.    RECEIVERSHIP DUTIES**

**IT IS FURTHER ORDERED** that the Receiver is directed and authorized to accomplish the following:

　　　　1.    Assume full control of the Receivership Defendants by removing, as the Receiver deems necessary or advisable, any director, officer, employee, independent contractor, or agent of the Receivership Defendants, including any Individual Defendant, from control of, management of, or participation in, the affairs of the Receivership Defendants;

　　　　2.    Take exclusive custody, control, and possession of all assets and documents of, or in the possession, custody, or under the control of, the Receivership Defendants, wherever situated. The Receiver shall have full power to divert mail and to sue for, collect, receive, take in possession, hold, and manage all assets and documents of the Receivership Defendants and other persons or entities whose interests are now held by or under the direction, possession, custody, or control of the Receivership Defendants. Provided, however, that the Receiver shall not attempt to collect any amount from a consumer or to allow the Receivership Defendants to continue to debit or otherwise charge a consumer's account, if the Receiver believes the consumer was a victim of the unfair or deceptive acts or practices alleged in the Complaint in this matter;

3.     Use any means necessary to take possession of and to secure all areas of the business premises of the Receivership Defendants.  Such steps may include, but are not limited to, the following as the Receiver deems necessary or advisable:  (a) serving this Order; (b) completing a written inventory of all receivership assets; (c) obtaining pertinent information from all employees and other agents of the Receivership Defendants, including, but not limited to, the name, home address, Social Security number, job description, method of compensation, and all accrued and unpaid commissions and compensation of each such employee or agent; (d) videotaping all portions of the locations; (e) securing the locations by changing the locks and disconnecting any computer modems or other means of access to the computer or other records maintained at the locations; (f) requiring any persons present on the premises at the time this Order is served to leave the premises, to provide the Receiver with proof of identification, or to demonstrate to the satisfaction of the Receiver that such persons are not removing from the premises documents or assets of the Receivership Defendants; and/or (g) employ the assistance of law enforcement officers as the Receiver deems necessary to implement the provisions of this Order;

4.     Conserve, hold, and manage all receivership assets, and perform all acts necessary or advisable to preserve the value of those assets, in order to prevent any irreparable loss, damage, or injury to consumers or to

creditors of the Receivership Defendants, including, but not limited to, obtaining an accounting of the assets and preventing transfer, withdrawal, or misapplication of assets, and including the authority to liquidate or close out any open securities or commodity futures positions of the Receivership Defendants;

5.      Enter into contracts and purchase insurance as advisable or necessary;

6.      Prevent the inequitable distribution of assets and determine, adjust, and protect the interests of consumers and creditors who have transacted business with the Receivership Defendants;

7.      Manage and administer the business of the Receivership Defendants until further order of this Court by performing all incidental acts that the Receiver deems to be advisable or necessary, which includes retaining, hiring, or dismissing any employees, independent contractors, or agents;

8.      Choose, engage, and employ attorneys, accountants, appraisers, and other independent contractors and technical specialists, as the Receiver deems advisable or necessary in the performance of duties and responsibilities under the authority granted by this Order;

9.      Make payments and disbursements from the receivership estate that are necessary or advisable for carrying out the directions of, or exercising the authority granted by, this Order.  The Receiver shall apply to the Court for prior

approval of any payment of any debt or obligation incurred by the Receivership

Defendants prior to the date of entry of this Order, except payments that the

Receiver deems necessary or advisable to secure assets of the Receivership

Defendants, such as rental payments;

10.   Determine and implement the manner in which the

Receivership Defendants will comply with, and prevent violations of, this Order

and all other applicable laws;

11.   Institute, compromise, adjust, appear in, intervene in, or

become party to such actions or proceedings in state, federal or foreign courts that

the Receiver deems necessary and advisable to preserve or recover the assets of the

Receivership Defendants or that the Receiver deems necessary and advisable to

carry out the Receiver's mandate under this Order;

12.   Defend, compromise, adjust, or otherwise dispose of any or all

actions or proceedings instituted in the past or in the future against the Receiver in

his or her role as Receiver, or against the Receivership Defendants that the

Receiver deems necessary and advisable to preserve the assets of the Receivership

Defendants or that the Receiver deems necessary and advisable to carry out the

Receiver's mandate under this Order;

13.   Continue and conduct the business of the Receivership

Defendants in such manner, to such extent, and for such duration as the Receiver

may in good faith deem to be necessary or appropriate to operate the business profitably and lawfully, if at all; provided, however, that the continuation and conduct of the business shall be conditioned upon the Receiver's good faith determination that the business can be lawfully operated at a profit using the assets of the receivership estate;

14.    Issue subpoenas to obtain documents and records pertaining to the receivership, and conduct discovery in this action on behalf of the receivership estate;

15.    Open one or more bank accounts as designated depositories for funds of the Receivership Defendants.  The Receiver shall deposit all funds of the Receivership Defendants in such a designated account and shall make all payments and disbursements from the receivership estate from such an account;

16.    Maintain accurate records of all receipts and expenditures that he or she makes as Receiver;

17.    Cooperate with reasonable requests for information or assistance from any state or federal law enforcement agency; and

18.    File reports with the Court on a timely and reasonable basis.

**C.    COOPERATION WITH THE RECEIVER**

**IT IS FURTHER ORDERED** that:

1.     Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, shall fully cooperate with and assist the Receiver.  This cooperation and assistance shall include, but not be limited to:

a.     Providing any information to the Receiver that the Receiver deems necessary to exercising the authority and discharging the responsibilities of the Receiver under this Order;

b.     Providing any password required to access any computer, electronic file, or telephonic data in any medium; or

c.     Advising all persons who owe money to the Receivership Defendants that all debts should be paid directly to the Receiver.

2.     Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from directly or indirectly:

a.     Transacting any of the business of the Receivership Defendants;

b.      Destroying, secreting, defacing, transferring, or otherwise altering or disposing of any documents of the Receivership Defendants, including, but not limited to, books, records, accounts, writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations, electronically-stored records, or any other records of any kind or nature;

c.      Transferring, receiving, altering, selling, encumbering, pledging, assigning, liquidating, or otherwise disposing of any assets owned, controlled, or in the possession or custody of, or in which an interest is held or claimed by, the Receivership Defendants, or the Receiver;

d.      Excusing debts owed to the Receivership Defendants;

e.      Failing to notify the Receiver of any asset, including accounts, of the Receivership Defendants held in any name other than the name of the Receivership Defendants, or by any person or entity other than the Receivership Defendants, or failing to provide any assistance or information requested by the Receiver in connection with obtaining possession, custody, or control of such assets;

f.      Doing any act or refraining from any act whatsoever to interfere with the Receiver's taking custody, control, possession, or managing of the assets or documents subject to this receivership; or to harass or interfere with

the Receiver in any way; or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants; or to refuse to cooperate with the Receiver or the Receiver's duly authorized agents in the exercise of their duties or authority under any order of this Court; or

g.      Filing, or causing to be filed, any petition on behalf of the Receivership Defendants for relief under the United States Bankruptcy Code, 11 U.S.C. § 101 et seq., without prior permission from this Court.

**D.      DELIVERY OF RECEIVERSHIP PROPERTY**

**IT IS FURTHER ORDERED** that:

1.      Immediately upon entry of this Order, or within such period as may be permitted by the Receiver, Defendants or any other person or entity shall transfer or deliver possession, custody, and control of the following to the Receiver:

a.      All assets of the Receivership Defendants, including assets subject to repatriation pursuant to Section XI, *infra*;

b.      All documents of the Receivership Defendants, including, but not limited to, books and records of accounts, all financial and accounting records, balance sheets, income statements, bank records (including

monthly statements, canceled checks, records of wire transfers, and check registers), client lists, title documents and other papers;

     c.    All assets belonging to members of the public now held by the Receivership Defendants; and

     d.    All keys, codes, and passwords necessary to gain or to secure access to any assets or documents of the Receivership Defendants, including, but not limited to, access to their business premises, means of communication, accounts, computer systems, mail boxes, or other property. This includes providing the necessary means to gain access to at least the following commercial mail boxes:

     (i)    225 South Lake Avenue, #300, Pasadena, California 91101;

     (ii)    530 South Lake Avenue, #501, Pasadena, California 91101; and

     (iii)    11333 Moorpark Street, #502, Studio City, California 91602.

2.    In the event any person or entity fails to deliver or transfer any receivership asset or document or otherwise fails to comply with any provision of this Section, the Receiver may file *ex parte* an Affidavit of Non-Compliance regarding the failure. Upon filing of the affidavit, the Court may authorize, without additional process or demand, Writs of Possession or Sequestration or other equitable writs requested by the Receiver. The writs shall authorize and

direct the United States Marshal or any sheriff or deputy sheriff of any county, or any other federal or state law enforcement officer, to seize the asset, document, or other thing and to deliver it to the Receiver.

### E.    TRANSFER OF FUNDS TO THE RECEIVER

**IT IS FURTHER ORDERED** that, upon service of a copy of this Order, all financial institutions, finance companies, commercial lending companies, credit card processing agents or agents providing electronic funds transfer services or automated clearing house processing, brokerage houses, escrow agents, money market or mutual funds, title companies, commodity futures merchants, commodity trading companies, precious metal dealers, trustees, or other financial institutions or depositories of any kind, shall cooperate with all reasonable requests of the Receiver relating to implementation of this Order, including transferring funds at his or her direction and producing records related to the assets of the Receivership Defendants.

### F.    STAY OF ACTIONS

**IT IS FURTHER ORDERED** that:

1.    Except by leave of this Court, during pendency of the receivership ordered herein, Defendants and all other persons and entities be and hereby are stayed from taking any action to establish or enforce any claim, right, or interest for, against, on behalf of, in, or in the name of, the Receivership

Defendants, any of their subsidiaries, affiliates, partnerships, assets, documents, or the Receiver or the Receiver's duly authorized agents acting in their capacities as such, including, but not limited to, the following actions:

      a.    Commencing, prosecuting, continuing, entering, or enforcing any suit or proceeding, except that such actions may be filed to toll any applicable statute of limitations;

      b.    Accelerating the due date of any obligation or claimed obligation; filing, perfecting or enforcing any lien; taking or attempting to take possession, custody, or control of any asset; attempting to foreclose, forfeit, alter, or terminate any interest in any asset, whether such acts are part of a judicial proceeding, are acts of self-help, or otherwise, or setoff of any debt owing to the Receivership Defendants that arose before the date of this Order against any claim against the Receivership Defendants;

      c.    Executing, issuing, serving, or causing the execution, issuance or service of, any legal process, including, but not limited to, attachments, garnishments, subpoenas, writs of replevin, writs of execution, or any other form of process whether specified in this Order or not; or

      d.    Doing any act or thing whatsoever to interfere with the Receiver taking custody, control, possession, or management of the assets or documents subject to this receivership, or to harass or interfere with the Receiver

in any way, or to interfere in any manner with the exclusive jurisdiction of this Court over the assets or documents of the Receivership Defendants.

       2.     This Order does not stay:

           a.     The commencement or continuation of a criminal action or proceeding;

           b.     The commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power; or

           c.     The enforcement of a judgment, other than a money judgment, obtained in an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

       3.     Except as otherwise provided in this Order, all persons and entities in need of documentation from the Receiver shall in all instances first attempt to secure such information by submitting a formal written request to the Receiver, and, if such request has not been responded to within thirty (30) days of receipt by the Receiver, any such person or entity may thereafter seek an order of this Court with regard to the relief requested.

## G.    COMPENSATION OF RECEIVER

    **IT IS FURTHER ORDERED** that the Receiver and all personnel hired by the Receiver as herein authorized, including counsel to the Receiver and

accountants, are entitled to reasonable compensation for the performance of duties

pursuant to this Order and for the cost of actual out-of-pocket expenses incurred by

them, from the assets now held by, or in the possession or control of, or which may

be received by the Receivership Defendants.  The Receiver shall file with the

Court and serve on the parties periodic requests for the payment of such reasonable

compensation, with the first such request filed no more than sixty (60) thirty (30) days after

the date of this Order and every 30 days thereafter.  The Receiver shall not increase the hourly rates used as the

bases for such fee applications without prior approval of the Court.

## XI.

## ACCESS TO BUSINESS PREMISES

**IT IS FURTHER ORDERED** that Defendants and their officers, agents,

servants, employees, and attorneys, and all other persons in active concert or

participation with any of them, who receive actual notice of this Order by personal

service or otherwise, whether acting directly or through any trust, corporation,

subsidiary, division, or other device, and the Receiver, shall allow Plaintiff's

representatives, agents, and assistants, as well as the Receivership Defendants'

representatives, and the Individual Defendants themselves, reasonable access to all

of Receivership Defendants' business premises, or any other premises where the

Receivership Defendants conduct business or customer service operations.  Such

locations include, but are not limited to, 547 Arden Avenue, Glendale, California 91203 and 555 Arden Avenue, Glendale, California 91203.

The purpose of this access shall be to inspect and copy any and all books, records, documents, accounts, and other property owned by, or in the possession of, the Receivership Defendants or their agents. The Receiver shall have the discretion to determine the time, manner, and reasonable conditions of such access. Plaintiff may remove materials from the Receivership Defendants' business premises to inspect, inventory, and copy such materials. Plaintiff shall return materials so removed within five (5) business days of completing said inventory and copying. Plaintiff's access to Defendants' documents pursuant to this Section shall not provide grounds for any Defendant to object to any subsequent request for documents served by Plaintiff.

## XII.

## REPATRIATION OF ASSETS AND DOCUMENTS

**IT IS FURTHER ORDERED** that Defendants shall:

A.    Unless previously completed in full compliance with the TRO, within three (3) business days following entry of this Order, take such steps as are necessary to repatriate to the territory of the United States of America all documents and assets that are located outside such territory and are held by or for

Defendants or are under Defendants' direct or indirect control, jointly, severally, or individually;

B.      Unless previously completed in full compliance with the TRO, within three (3) business days following entry of this Order, provide Plaintiff with a full accounting of all documents and assets that are located outside of the territory of the United States of America or that have been transferred to the territory of the United States of America pursuant to Subsection A above and are held by or for any Defendant or are under any Defendant's direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic financial institution or other entity holding the documents and assets, along with the account numbers and balances;

C.      Hold and retain all such documents and assets and prevent any transfer, disposition, or dissipation whatsoever of any such documents or assets; and

D.      Unless previously completed in full compliance with the TRO, within three (3) business days following entry of this Order, provide Plaintiff access to Defendants' records and documents held by financial institutions or other entities outside the territory of the United States of America, by signing and delivering to Plaintiff's counsel the Consent to Release of Financial Records attached to this Order as Attachment A.

# XIII.

## <u>INTERFERENCE WITH REPATRIATION</u>

**IT IS FURTHER ORDERED** that Defendants are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section XII of this Order, including, but not limited to:

A.      Sending any statement, letter, facsimile, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that assets have been fully repatriated pursuant to the preceding Section of this Order; and

B.      Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court order, until such time as assets have been fully repatriated pursuant to the preceding Section of this Order.

# XIV.

## <u>EXPEDITED DISCOVERY</u>

**IT IS FURTHER ORDERED** that pursuant to Federal Rules of Civil Procedure 30(a), 31(a), 34, and 45, and notwithstanding the provisions of Federal

Rules of Civil Procedure 26(d) and (f), 30(a)(2)(A), and 31(a)(2)(A), the parties are granted leave, at any time after entry of this Order to:

A.      Take the deposition of any person, whether or not a party, for the purpose of discovering the nature, location, status, and extent of the assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action; and

B.      Demand the production of documents from any person, whether or not a party, relating to the nature, status, and extent of the assets of Defendants, and Defendants' affiliates and subsidiaries; the nature and location of documents reflecting the business transactions of Defendants, and Defendants' affiliates and subsidiaries; the location of any premises where Defendants, directly or through any third party, conduct business operations; the Defendants' whereabouts; and/or the applicability of any evidentiary privileges to this action.

Three (3) days notice shall be deemed sufficient for any such deposition, five (5) days notice shall be deemed sufficient for the production of any such documents, and twenty-four (24) hours notice shall be deemed sufficient for the

production of any such documents that are maintained or stored only as electronic data. The provisions of this Section shall apply both to parties to this case and to non-parties. The limitations and conditions set forth in Federal Rules of Civil Procedure 30(a)(2)(A)(ii) and 31(a)(2)(A)(ii) regarding subsequent depositions of an individual shall not apply to depositions taken pursuant to this Section. Any such depositions taken pursuant to this Section shall not be counted toward any limit on the number of depositions under the Federal Rules of Civil Procedure or the Local Rules of the Central District of California, including those set forth in Federal Rules of Civil Procedure 30(a)(2)(A) and 31(a)(2)(A). Service of discovery upon a party, taken pursuant to this Section, shall be sufficient if made through the means described in Section XVI of this Order.

## XV.

## DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that Defendants shall immediately provide a copy of this Order to each of their corporations, subsidiaries, affiliates, divisions, directors, officers, agents, partners, successors, assigns, employees, attorneys, agents, representatives, sales entities, sales persons, telemarketers, independent contractors, and any other persons in active concert or participation with them. Within five (5) calendar days following entry of this Order, each Defendant shall file with this Court and serve on Plaintiff, an affidavit identifying the names, titles,

addresses, and telephone numbers of the persons that Defendants have served with a copy of this Order in compliance with this provision.

## XVI.

## SERVICE OF THIS ORDER

**IT IS FURTHER ORDERED** that copies of this Order may be distributed by United States First Class Mail, overnight delivery, facsimile, electronic mail, or personally, by agents or employees of Plaintiff, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any person, financial institution, or other entity that may have possession or control of any property, property right, document, or asset of any Defendant, or that may be subject to any provision of this Order. Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

## XVII.

## CONSUMER REPORTING AGENCIES

**IT IS FURTHER ORDERED** that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency may furnish a consumer or credit report concerning any Defendant to Plaintiff.

# XVIII.

## JURISDICTION

**IT IS FURTHER ORDERED** that this Court shall retain jurisdiction of this matter for all purposes.

**IT IS SO ORDERED**, this _12th_ day of May, 2015.

_____

Hon. Percy Anderson
United States District Judge

1
2

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

3

FEDERAL TRADE COMMISSION,

4

Plaintiff,

Case No. _____

5

6

v.

7

SALE SLASH, LLC, a California
limited liability company, *et al.*,

CONSENT TO RELEASE OF
FINANCIAL INFORMATION

8

9

Defendants.

10

11

I, _____, of _____(city

12

13

or province and country), do hereby direct any person, bank, savings and loan

14

association, credit union, depository institution, finance company, commercial

15

16

lending company, payment processor, payment processing entity, common carrier,

17

customs broker, commercial mail receiving agency, mail holding and/or

18

forwarding company, brokerage house, escrow agent, money market or mutual

19

20

fund, title company, commodity trading company, or trustee, that holds, controls or

21

maintains custody of assets, wherever located, that are owned or controlled by me,

22

23

or any of the above Defendants, in whole or in part, or at which I, or any of the

24

above Defendants, have an account of any kind upon which I am authorized to

25

26

draw, and its officers, employees and agents, to disclose all information and deliver

27

copies of all documents of every nature in its possession or control which relate to

28

the said accounts to any attorney for Plaintiffs, and to give evidence relevant

Attachment A

thereto, in the above captioned matter, *FTC v. Sale Slash, LLC, et al.*, now pending

in the United States District Court for the Central District of California, and this

shall be irrevocable authority for so doing.  This direction is intended to apply to

the laws of countries other than the United States of America which restrict or

prohibit the disclosure of bank or other financial information without the consent

of the holder of the account, and shall be construed as consent with respect thereto,

and the same shall apply to any of the accounts for which I may be the relevant

principal.


Dated: _____, 2015


_____
[Signature]


_____
[Print Name]

Attachment A

## CERTIFICATE OF SERVICE

My name is Matthew H. Wernz.  I am an attorney employed by the Federal Trade Commission ("FTC"), 55 West Monroe Street, Suite 1825, Chicago, IL 60603.  On Friday, May 8, 2015, I caused the FTC's proposed Preliminary Injunction to be sent by FedEx and email to:

Karl S. Kronenberger
Virginia Sanderson
Kronenberger Rosenfeld, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
Tel: (415) 955-1155; Fax: (415) 955-1158
karl@KRInternetlaw.com
ginny@KRInternetlaw.com
*Attorneys for Defendants Sale Slash, LLC, Purists Choice LLC, Artur Babayan, and Vahe Haroutounian*

Craig Welin
Michael Fletcher
Frandzel Robins Bloom & Csato, LC
650 Wilshire Boulevard
Seventeenth Floor
Los Angeles, California 90048-4920
Tel: (323) 852-1000; Fax: (323) 651-2577
cwelin@frandzel.com
mfletcher@frandzel.com
*Attorneys for Court-appointed Receiver Robb Evans and Associates, LLC*

Derek Newman
Keith Scully
Newman Du Wors LLP
100 Wilshire Boulevard, Suite 940
Santa Monica, CA 90401
DN@newmanlaw.com
keith@newmanlaw.com
*Attorneys for non-party VAS Media Group, Inc.*

1

I declare under penalty of perjury that the foregoing is true and correct. Executed this 8th day of May, 2015, at Chicago, Illinois.

Matthew H. Wernz