Derek A. Newman, State Bar No. 190467
derek@newmanlaw.com
Keith Scully, Pro Hac Vice pending
keith@newmanlaw.com
NEWMAN DU WORS LLP
100 Wilshire Boulevard, Suite 940
Santa Monica, CA 90401
Telephone: (310) 359-8200
Facsimile: (310) 359-8190

Attorneys for VAS Media Group, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION,<br><br>Plaintiff,<br><br>v.<br><br>SALE SLASH, LLC, et al.,<br><br>Defendants. | No. CV15-03107<br><br>**THIRD PARTY VAS MEDIA GROUP, INC.'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: May 11, 2015<br>Time: 1:30 p.m.<br>Courtroom: 15<br><br>The Honorable Percy Anderson |

## I. INTRODUCTION

In its zeal to enforce an *ex parte* Temporary Restraining Order against defendants Sale Slash et al. (collectively, "Sale Slash")'s assets, the FTC has wrongfully seized and refuses to release computers, tax returns, personal items, and other items belonging to third-party VAS Media Group, Inc. and froze VAS Media's bank account. VAS Media temporarily rents office space in the same office as Sales Slash, but otherwise has no connection to this case. The FTC has no basis to seize VAS Media's property, and the Court should order its immediate release and that the freeze order is lifted

## II. BACKGROUND

**A. The FTC obtained a TRO against Sale Slash but not VAS Media.**

On April 27, 2015, the FTC obtained an *ex parte* Temporary Restraining Order with an asset freeze and appointment of a receiver. (the "TRO"). The TRO defines "Receivership Defendants" as "Sale Slash, LLC, a California limited liability company, and Purists Choice LLC, a California limited liability company." (TRO at p. 7.) It separately identifies "Individual Defendants" as Artur Babayan and Vahe Haroutounian. (TRO at p. 8.) It appoints a receiver, and allows the receiver control over only the assets and documents of the Receivership Defendants, but *only* the Receivership Defendants. (TRO at p. 24.) The TRO also prevents "Defendants, and their officers, agents, services, employees, and attorneys, and all persons in active concert or participation with any of them" from taking certain actions related to email marketing or spoliation of assets. (TRO at pp 9-13.) The TRO does not name or apply to VAS Media in any capacity.

**B. VAS Media shares office space with Sale Slash but otherwise has no connection to this case.**

VAS Media is a California corporation that specializes in adult industry marketing and technical consulting. (May 7, 2015 Declaration of Edvin Aghanian ("Aghanian Decl.") at ¶ 3, Att. A.) VAS Media has been in business for over ten

1
OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION

1 years, and was historically based in Glendale, California. (Aghanian Decl. at ¶ 4.)
2 VAS Media's Glendale lease expired and VAS Media needed temporary office
3 space. (Aghanian Decl. at ¶ 5.) As a short-term solution, VAS Media rented a
4 single room in the same building as Sale Slash's offices. (Aghanian Decl. at ¶
5 6.) VAS Media has a rental contract with the building's owner, and provided
6 compensation to the owner—not to Sale Slash—for rental of the space. (Aghanian
7 Decl. at ¶ 7, Att. B.)

8     VAS Media's room is separate from the other offices. (Aghanian Decl. at ¶ 8.)
9 But the room can be locked to seal it off from Sale Slash's space, and was locked
10 every night when VAS Media's staff left. (Aghanian Decl. at ¶ 9.) And, VAS Media
11 doesn't share filing systems, computer servers, or staff with Sale Slash. (Aghanian
12 Decl. at ¶ 10.) VAS Media received mail and packages addressed to VAS Media at
13 the office location. *Id.*

14     VAS Media has no information in its files relevant to Sale Slash, and likewise
15 did not store any of VAS Media's business information in Sale Slash's office: the
16 two companies are completely separate. (Aghanian Decl. at ¶ 11.) Although VAS
17 Media and Sale Slash shared an Internet connection during VAS Media's short-
18 term tenancy, no data was ever shared between the two companies as a result of
19 that connection. (Aghanian Decl. at ¶ 12.) VAS Media and Sales Slash have no
20 employees, shareholders, members, officers, or directors in common. *Id.*

21     VAS Media has consulted for numerous companies in the L.A.-area and
22 around the country. (Aghanian Decl. at ¶ 13.) VAS performed one consulting job
23 for Sale Slash in mid-2013. (Aghanian Decl. at ¶ 14.) That consulting job involved
24 Sale Slash's technical infrastructure and advertising options with Google, Yahoo,
25 and Microsoft Bing. *Id.* The job ended in 2013, and Sale Slash paid VAS Media
26 approximately $60,000. (Aghanian Decl. at ¶ 15.) No money or assets other than
27 that consulting contract payment have been exchanged between VAS Media and
28 Sale Slash. (Aghanian Decl. at ¶ 16.)

Vahe Haroutounian is a VAS Media shareholder. (Aghanian Decl. at ¶ 17.) He is an individual defendant alleged to have registered a tracking platform for Sale Slash. He did not do so in his capacity as a VAS Media shareholder, and has no ownership interest in any of the defendant corporations. *See* Declaration of Vahe Haroutounian in Support of Defendants' Response to Order to Show Cause ("Haroutounian Decl.") ¶2.) VAS Media's bank account is a corporate account, and not Haroutounian's personal account. (Aghanian Decl. at ¶ 18)

C. **The FTC improperly seized assets belonging to VAS Media.**

VAS Media kept business and personal property in its office. (Aghanian Decl. at ¶ 19.) No Sale Stash information was maintained there. *Id.* The FTC seized the following items that are VAS Media's property from VAS Media's individual office space: A total of 6 computers and 4 monitors, including an iMac and 2 Apple monitors on VAS Media President Steve Krikorian's desk, an iMac and 2 Apple monitors, an unplugged Mac mini and a hard drive on Edvin Aghanian's desk. Under Aghanian's desk there were two black PC towers and another Mac Mini. The computers on and under Aghanian's desk were used for software development, and are essential to VAS Media's business operations. (Aghanian Decl. at ¶ 21.) The FTC also seized a a cabinet full of checks, business documents, personal and unfiled corporate taxes. (Aghanian Decl. at ¶ 22.) Each of these items was stored in VAS Media's separate space, and not in Sale Slash's office. (Aghanian Decl. at ¶ 21.) VAS Media requires this property—especially the computers, its checks, and the unfiled tax returns—to operate its business. (Aghanian Decl. at ¶ 22.) VAS Media is suffering business harm every day that it cannot access its business information. *Id.*

On May 7, 2015, VAS Media also learned the receiver froze VAS Media's bank account. (Aghanian Decl. at ¶ 23.) This account is essential to VAS Media's operations, including paying healthcare premiums for VAS employees and their families. *Id.*

## III. ARGUMENT

A third-party has standing to object to a preliminary injunction whenever its interests are directly affected. *F.T.C. v. Verity Int'l, Ltd.*, No. 00 CIV 7422 (LAK), 2002 WL 44126, at *2 (S.D.N.Y. Jan. 11, 2002). VAS Media's interests are affected because the FTC wrongfully seized VAS Media's property. VAS Media is a tenant in the same building as defendant Sale Slash, but otherwise has no connection to this case. (Aghanian Decl. at ¶¶ 5-18.) VAS Media takes no position on whether a preliminary injunction should be entered against Sale Slash, but if an injunction is entered, the court should also order the immediate return of VAS Media's property and order the receiver to unfreeze VAS Media's bank account.

**A. The FTC's authority is limited to seizing and controlling assets belonging to Sale Slash or Sale Slash's agents. VAS Media's property is not subject to freeze or seizure.**

Section 13(b) of the FTC Act permits the FTC to seek an injunction whenever it believes a corporation is violating or about to violate the Act. 15 U.S.C. § 53(b). This injunction can include an asset freeze, and appointment of a receiver over the *defendants'* assets. *F.T.C. v. Verity Int'l, Ltd.*, No. 00 CIV 7422 (LAK), 2002 WL 44126, at *2 (S.D.N.Y. Jan. 11, 2002)(emphasis added). Rule 65 restricts the Court's authority to enter a binding injunction only "upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ.P. 65(d).

The FTC cannot proceed against assets held by third parties absent jurisdiction over the assets and a factual basis for doing so. *U.S. v. Kirschenbaum*, 156 F.3d 784, 795 (7th Cir.1998). The TRO incorporates these restrictions, and limits the receiver's authority to only the assets of the Receivership Defendants. And it restrains only the defendants from taking any action.

Third parties requesting release of assets bear the burden of proving that the assets do not belong to the fraudulent actor. *F.T.C. v. Think Achievement*, 144

F.Supp.2d 1013, 1020-22 (N.D.Ind.2000). VAS Media can easily meet this burden, because the FTC can present no evidence that VAS Media's assets belong to the Receivership Defendants or are otherwise subject to the FTC's control. VAS Media is not a Receivership Defendant nor is it an Individual Defendant. It is not an agent of Sale Slash nor otherwise subject to the Court's jurisdiction. That it had a consulting contract 3 years ago and shares office space is not evidence that it is acting as Sale Slash's agent or that its assets actually belong to Sale Slash. And that a shareholder may have independently participated in Sale Slash's activities does not make VAS Media subject to the FTC's control. Accordingly, the FTC and the receiver have no authority to retain any of VAS Media's assets or freeze its bank account.

The FTC may argue that it is entitled to freeze VAS Media's assets because individual defendant Haroutounian is a shareholder. But a corporate shareholder has only an ownership interest in the corporation itself, not a claim to the corporation's bank account or individual assets. The money in the account does not belong to Haroutounian, and nor do the computers. The FTC might be able to freeze Haroutounian's stock or order VAS Media not to disgorge any distributions to him, but it cannot freeze an innocent third party's operating capital to which the individual defendant has no claim.

Likewise, the FTC may argue that Haroutounian has signature authority on the bank account by virtue of his position as a company employee. But this does not require a freeze to resolve: VAS Media can simply be ordered to remove him from the signature card and the bank ordered not to disburse any funds on his authority.

### B. Even if VAS Media's assets were subject to freeze, the Court should decline the preliminary injunction as it relates to those assets.

Even when asset belongs to a defendant, the Court must still (i) weigh equities; and (ii) consider the FTC's likelihood of ultimate success before entering a preliminary injunction. *F.T.C. v. World Wide Factors, Ltd.*, 882 F.2d 344, 346 (9th

Cir. 1989). Defendants have ably briefed the weakness of the FTC's overall case, and VAS Media incorporates that argument by reference. But even if the FTC's case was strong against defendants, the equities mandate that VAS Media be allowed access to its computers, tax returns, and operating funds. Without this access, VAS Media and its shareholder will suffer massive financial harm, including an inability to pay employee health insurance premiums. And there is no benefit to the FTC in seizing used computers and tax returns. The FTC can investigate its case through the discovery process, and those assets are worth very little. Similarly, the small amount of operating capital in VAS Media's bank account will provide little recompense to consumers—even if the FTC could possibly construct a theory wherein the funds could be disbursed.

## IV. CONCLUSION

VAS Media is a third party with no connection to the allegations in this case. It is not named in the TRO, and its assets are not subject to the FTC and the receiver's control. The Court should order the FTC to immediately release all of VAS Media's property and lift the freeze on VAS Media's bank account.

Dated May 8, 2015.

NEWMAN DU WORS LLP

By: /s/ Derek Newman
Derek Newman, State Bar No. 190467
Keith Scully, Pro Hac Vice pending
Attorneys for VAS Media Group, Inc.