1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11   FEDERAL TRADE COMMISSION,          CV 15-3107 PA (AJWx)

12           Plaintiff,                 PRELIMINARY INJUNCTION AS TO
                                        DEFENDANTS APEX CUSTOMER CARE
13        v.                            LLC, PENWAY LLC, RENVEE LLC,
                                        OPTIM PRODUCTS LLC, AND EDGAR
14   SALE SLASH, LLC, et al.,           BABAYAN

15           Defendants.
16
17
18          Plaintiff, Federal Trade Commission ("FTC") has filed its Notice of Application and

19   Application for Preliminary Injunction as to Defendants Apex Customer Care LLC, Penway

20   LLC, Renvee LLC, Optim Products LLC, and Edgar Babayan, (the "Application"), and a

21   Memorandum of Points and Authorities and evidence in support of the Application.  This

22   Court, having considered the Preliminary Injunction as to Defendants Apex Customer Care

23   LLC, Penway LLC, Renvee LLC, Optim Products LLC, and Edgar Babayan (the "Order"),

24   the Application and other filings in support of the Order, and the other filings in this case,

25   and for other cause appearing, hereby orders that:

26                              **FINDINGS OF FACT**

27          1.      This Court has jurisdiction over the subject matter of this case and over New

28   Defendants.

2.     Venue in this district, process, and service of process are proper.

3.     There is good cause to believe that defendants Apex Customer Care LLC, Penway LLC, Renvee LLC, Optim Products LLC, and Edgar Babayan (collectively "Defendants"), have engaged and are likely to continue to engage in acts or practices that violate Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) & 52, and Section 5(a) of the CAN-SPAM Act, 15 U.S.C. § 7704(a), and that the FTC is therefore likely to prevail on the merits of this action.

4.     There is good cause to believe that consumers will suffer immediate and continuing harm from Defendants' ongoing violations of Section 5(a) and 12 of the FTC Act and Section 5(a) of the CAN-SPAM Act unless Defendants are restrained and enjoined by order of this Court.

5.     There is good cause to believe that immediate and irreparable damage to the Court's ability to grant effective final relief for consumers in the form of monetary restitution and/or disgorgement of ill-gotten gains will occur from the transfer, dissipation, or concealment by Defendants of their assets or business records unless Defendants are immediately restrained and enjoined by order of this Court.  Therefore, there is good cause for an asset freeze.

6.     Weighing the equities and considering the FTC's likelihood of ultimate success, this Order is in the public interest.

7.     No security is required of any agency of the United States for issuance of a preliminary injunction, Fed. R. Civ. P. 65(c).

## DEFINITIONS

For the purposes of this Order, the following definitions shall apply:

1.     "**Asset**" or "**Assets**" means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, "goods," "instruments," "equipment," "fixtures," "general intangibles," "inventory," "checks," or "notes" (as these terms are defined in the Uniform Commercial Code), lines of credit, chattels, leaseholds,

contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, and all cash, wherever located.

2.     "**Assisting others**" includes, but is not limited to: (a) performing customer service functions, including, but not limited to, receiving or responding to consumer complaints; (b) formulating or providing, or arranging for the formulation or provision of, any sales script or other marketing material; (c) providing names of, or assisting in the generation of, potential customers; (d) performing or providing marketing or billing services of any kind; (e) acting as an officer or director of a business entity; (f) hosting websites; or (g) processing payments.

3.     "**Clear and conspicuous**" and "**clearly and conspicuously**" means that a required disclosure is difficult to miss (i.e., easily noticeable) and easily understandable by ordinary consumers, including in all of the following ways:

a.     In any communication that is solely visual or solely audible, the disclosure must be made through the same means through which the communication is presented.  In any communication made through both visual and audible means, such as a television advertisement, the disclosure must be presented simultaneously in both the visual and audible portions of the communication, even if the representation requiring the disclosure is made in only one means.

b.     A visual disclosure, by its size, contrast, location, the length of time it appears, and other characteristics, must stand out from any accompanying text or other visual elements so that it is easily noticed, read, and understood.

c.     An audible disclosure, including by telephone or streaming video, must be delivered in a volume, speed, and cadence sufficient for ordinary consumers to easily hear and understand it.

d.     In any communication using an interactive electronic medium, such as the Internet or software, the disclosure must be unavoidable.

1    e.    The disclosure must use diction and syntax understandable to ordinary

2    consumers and must appear in each language in which the representation that requires the

3    disclosure appears.

4         f.    The disclosure must comply with these requirements in each medium

5    through which it is received, including all electronic devices and face-to-face

6    communications.

7         g.    The disclosure must not be contradicted or mitigated by, or inconsistent

8    with, anything else in the communication.

9    4.    "**Commercial electronic mail message**" (or "**commercial email**") means any

10   electronic mail message the primary purpose of which is the commercial advertisement or

11   promotion of a commercial product or service (including the content on an Internet website

12   operated for commercial purposes).  15 U.S.C. § 7702(2).

13   5.    "**Competent and reliable scientific evidence**" means tests, analyses, research,

14   or studies that have been conducted and evaluated in an objective manner by qualified

15   persons and are generally accepted in the profession to yield accurate and reliable results.

16   6.    "**Corporate Defendants**" means Sale Slash, LLC, a California limited liability

17   company, Purists Choice LLC, a California limited liability company, Apex Customer Care

18   LLC, a California limited liability company, Penway LLC, a California limited liability

19   company, Renvee LLC, a California limited liability company, and Optim Products LLC, a

20   California limited liability company, and their successors and assigns, as well as any

21   subsidiaries, and any fictitious business entities or business names created or used by these

22   entities.

23   7.    "**Covered Product**" means any dietary supplement, food, or drug, including,

24   but not limited to, Premium Green Coffee, Premium Raspberry Ketone, Pure Caralluma

25   Fimbriata Extract, Pure Forskolin Extract, Pure Garcinia Cambogia, Pure Garcinia

26   Cambogia HCA, Pure Saffron, and Pure White Kidney Bean Extract.

27   8.    "**Defendant**" or "**Defendants**" means all of the Individual Defendants and the

28   Corporate Defendants, individually, collectively, or in any combination.

-4-

9.      "**Document**" or "**Documents**" means any materials listed in Federal Rule of Civil Procedure 34(a), and includes writings, drawings, graphs, charts, photographs, audio and video recordings, computer records, and other data compilations from which information can be obtained and translated, if necessary, through detection devices into reasonably usable form.  A draft or non-identical copy is a separate document within the meaning of the term.

10.     "**Financial Institution**" means any bank, savings and loan institution, credit union, or any financial depository of any kind, including, but not limited to, any brokerage house, trustee, broker-dealer, escrow agent, title company, commodity trading company, or precious metal dealer.

11.     "**Header Information**" means the source, destination, and routing information attached to an electronic mail message, including the originating domain name and originating electronic mail address, and any other information that appears in the line identifying, or purporting to identify, a person initiating the message.  15 U.S.C. § 7702(8).

12.     "**Individual Defendants**" means Edgar Babayan, Artur Babayan, and Vahe Haroutounian, or by whatever other name each may be known.

13.     "**Initiate**," when used with respect to a commercial electronic mail message, means to originate or transmit such message or to procure the origination or transmission of such message.  15 U.S.C. § 7702(9).

14.     "**New Corporate Defendants**" means Apex Customer Care LLC, a California limited liability company, Penway LLC, a California limited liability company, Renvee LLC, a California limited liability company, and Optim Products LLC, a California limited liability company, and their successors and assigns, as well as any subsidiaries, and any fictitious business entities or business names created or used by these entities.

15.     "**New Individual Defendant**" means Edgar Babayan, or by whatever other name he may be known.

16.    "**Person**" means a natural person, an organization or other legal entity, including a corporation, partnership, sole proprietorship, limited liability company, association, cooperative, or any other group or combination acting as an entity.

17.    "**Plaintiff**," "**Commission**," or "**FTC**" means the Federal Trade Commission.

18.    "**Procure**," when used with respect to the initiation of a commercial electronic mail message, means intentionally to pay or provide other consideration to, or induce, another person to initiate such a message on one's behalf.  15 U.S.C. § 7702(12).

19.    "**Sender**" means a person who initiates a commercial electronic mail message and whose product, service, or Internet website is advertised or promoted by the message. 15 U.S.C. § 7702(16).

20.    "**TRO**" means the Ex Parte Temporary Restraining Order with an Asset Freeze, Appointment of a Receiver, and Other Equitable Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue entered by this Court on April 27, 2015.

## I.    PROHIBITED WEIGHT-LOSS CLAIMS

IT IS ORDERED that Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any Covered Product, are hereby restrained and enjoined from making, or assisting others in making, directly or by implication, including through the use of a product name, endorsement, depiction, or illustration, any representation, that:

A.    Such Covered Product causes, or assists in causing, weight loss, or any specific amount of weight loss;

B.    Such Covered Product causes, or assists in causing, rapid weight loss; or

C.    Consumers who use the Covered Product can generally expect to achieve the weight loss results represented by an endorser of such Covered Product;

unless the representation is non-misleading and, at the time of making such representation, Defendants possess and rely upon competent and reliable scientific evidence, as that term is

-6-

1  defined above, that is sufficient in quality and quantity based on standards generally

2  accepted in the scientific fields, when considered in light of the entire body of relevant and

3  reliable scientific evidence, to substantiate the representation is true.

4  **II.    PROHIBITED MISREPRESENTATIONS**

5        IT IS FURTHER ORDERED that Defendants and their officers, agents, servants,

6  employees, and attorneys, and all other persons in active concert or participation with any of

7  them who receive actual notice of this Order by personal service or otherwise, whether

8  acting directly or through any corporation, subsidiary, division, or other device, in

9  connection with the advertising, marketing, promotion, offering for sale, or sale of any

10 Covered Product, are hereby restrained and enjoined from misrepresenting, or assisting

11 others in misrepresenting, directly or indirectly, expressly or by implication, any material

12 fact, including, but not limited to, that any Covered Product is or has been used, endorsed, or

13 approved by specifically identified celebrities such as Oprah Winfrey and The Doctors

14 television show.

15 **III.   PROHIBITIONS AGAINST COMMERCIAL EMAIL**

16 **MISREPRESENTATIONS**

17        IT IS FURTHER ORDERED that Defendants and their officers, agents, servants,

18 employees, and attorneys, and all other persons in active concert or participation with any of

19 them who receive actual notice of this Order by personal service or otherwise, whether

20 acting directly or through any corporation, subsidiary, division, or other device, in

21 connection with the advertising, marketing, promotion, offering for sale, or sale of any

22 product, service, or program, are hereby restrained and enjoined from initiating the

23 transmission of a commercial email that:

24        A.    Contains, or is accompanied by, materially false or materially misleading

25 header information, including but not limited to:

26            1.    an originating electronic mail address, domain name, or Internet

27 Protocol address when the access to such originating electronic email address, domain name

28

1   or Internet Protocol address was obtained by means of false or fraudulent pretenses or

2   representations; or

3             2.      a "from" line (the line identifying or purporting to identify the person

4   initiating the messages) that does not accurately identify any person who initiated the

5   message; or

6         B.      Contains a subject heading likely to mislead recipients, acting reasonably

7   under the circumstances, about material facts regarding the contents or subject matter of the

8   message.

9   **IV.    PROHIBITIONS AGAINST OPT-OUT AND POSTAL ADDRESS**

10            **VIOLATIONS**

11         IT IS FURTHER ORDERED that Defendants and their officers, agents, servants,

12   employees, and attorneys, and all other persons in active concert or participation with any of

13   them who receive actual notice of this Order by personal service or otherwise, whether

14   acting directly or through any corporation, subsidiary, division, or other device, in

15   connection with the advertising, marketing, promotion, offering for sale, or sale of any

16   product, service, or program, are hereby restrained and enjoined from initiating the

17   transmission of a commercial email that:

18         A.      Does not include a clear and conspicuous notice of the recipient's opportunity

19   to decline to receive further commercial electronic mail messages from the sender at the

20   recipient's electronic mail address and describes the means by which the recipient can

21   decline to receive future commercial email messages from the sender;

22         B.      Does not include a functioning return electronic mail address or other

23   Internet-based mechanism, clearly and conspicuously displayed, that a recipient can use to

24   submit a reply electronic mail message or other form of Internet-based communication

25   requesting not to receive future commercial electronic mail messages from the sender at the

26   electronic mail address where the message was received, and that remains capable of

27   receiving such messages or communications for no less than 30 days after the transmission

28   of the original message;

1      C.    Does not include the sender's valid physical postal address; or

2      D.    Is sent to a recipient's email address, more than 10 days after the sender

3  receives a request from that email recipient not to receive future commercial electronic mail

4  messages from the sender at the recipient's electronic mail address.

5  **V.    ASSET FREEZE**

6      IT IS FURTHER ORDERED that Defendants and their officers, agents, servants,

7  employees, attorneys, and all other persons in active concert or participation with any of

8  them, who receive actual notice of this Order by personal service or otherwise, whether

9  acting directly or through any trust, corporation, subsidiary, division, or other device, except

10  as provided herein, as stipulated by the parties, or as directed by further order of the Court,

11  are hereby restrained and enjoined from:

12      A.    Transferring, liquidating, converting, encumbering, pledging, loaning, selling,

13  concealing, dissipating, disbursing, assigning, spending, withdrawing, granting a lien or

14  security interest or other interest in, or otherwise disposing of any funds, real or personal

15  property, accounts, contracts, shares of stock, lists of consumer names, or other assets, or

16  any interest therein, wherever located, including outside the territorial United States, that

17  are:

18      1.    Owned, controlled, or held by, in whole or in part, for the benefit of, or

19  subject to access by, or belonging to, any Defendant;

20      2.    In the actual or constructive possession of any Defendant; or

21      3.    In the actual or constructive possession of, or owned, controlled, or

22  held by, or subject to access by, or belonging to, any other corporation, partnership, trust, or

23  any other entity directly or indirectly owned, managed, or controlled by, or under common

24  control with, any Defendant, including, but not limited to, any assets held by or for any

25  Defendant in any account at any bank or savings and loan institution, or with any credit card

26  processing agent, automated clearing house processor, network transaction processor, bank

27  debit processing agent, customer service agent, commercial mail receiving agency, or mail

28  holding or forwarding company, or any credit union, retirement fund custodian, money

market or mutual fund, storage company, trustee, or with any broker-dealer, escrow agent, title company, commodity trading company, precious metal dealer, or other financial institution or depository of any kind, either within or outside the territorial United States;

B.      Opening or causing to be opened any safe deposit boxes, commercial mail boxes, or storage facilities titled in the name of any Defendant, or subject to access by any Defendant or under any Defendant's control, without providing the Commission prior notice and an opportunity to inspect the contents in order to determine that they contain no assets covered by this Section;

C.      Cashing any checks or depositing or processing any payments from customers or clients of Defendants;

D.      Incurring charges or cash advances on any credit card issued in the name, singly or jointly, of any Defendant; or

E.      Incurring liens or encumbrances on real property, personal property, or other assets in the name, singly or jointly, of any Defendant or of any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by any Defendant.

*Provided further*, that the assets affected by this Section shall include: (1) all assets of Defendants as of the time this Order is entered; and (2) for assets obtained after the time this Order is entered, those assets of Defendants that are derived, directly or indirectly, from the Defendants' activities related to the marketing or sale of any Covered Product, including the activities of any Defendant.

This Section does not prohibit the repatriation of foreign assets, as specifically required in Section X (Repatriation of Assets and Documents) of this Order.

**VI.    DUTIES OF THIRD PARTIES HOLDING DEFENDANTS' ASSETS**

IT IS FURTHER ORDERED that any financial institution, business entity, or person maintaining or having custody or control of any account or other asset of any Defendant, or any corporation, partnership, or other entity directly or indirectly owned, managed, or controlled by, or under common control with any Defendant, which is served with a copy of this Order, or otherwise has actual or constructive knowledge of this Order, shall:

-10-

A.      Hold and retain within its control and prohibit the withdrawal, removal, assignment, transfer, pledge, hypothecation, encumbrance, disbursement, dissipation, conversion, sale, liquidation, or other disposal of any of the assets, funds, documents, or other property held by, or under its control:

1.      On behalf of, or for the benefit of, any Defendant or any other Person subject to Section V above;

2.      In any account maintained in the name of, or for the benefit of, or subject to withdrawal by, any Defendant or other Person subject to Section V above; and

3.      That are subject to access or use by, or under the signatory power of, any Defendant or other Person subject to Section V above;

B.      Deny Defendants access to any safe deposit boxes or storage facilities that are either:

1.      Titled in the name, individually or jointly, of any Defendant, or other Person subject to Section V above; or

2.      Subject to access by any Defendant or other Person subject to Section V above;

C.      Within five (5) days of the date of service of this Order, provide Plaintiff a sworn statement setting forth:

1.      The identification number of each account or asset titled in the name, individually or jointly, of any Defendant, or held on behalf of, or for the benefit of, any Defendant or other Person subject to Section V above, including all trust accounts managed on behalf of any Defendant or subject to any Defendant's control;

2.      The balance of each such account, or a description of the nature and value of such asset;

3.      The identification and location of any safe deposit box, commercial mail box, or storage facility that is either titled in the name, individually or jointly, of any Defendant, or is otherwise subject to access or control by any Defendant or other Person subject to Section V above, whether in whole or in part; and

-11-

4.      If the account, safe deposit box, storage facility, or other asset has been closed or removed, the date closed or removed and the balance on said date;

D.      Within five (5) days of a request from any Plaintiff, provide Plaintiff copies of all records or other documentation pertaining to each such account or asset, including, but not limited to, originals or copies of account applications, account statements, corporate resolutions, signature cards, checks, drafts, deposit tickets, transfers to and from the accounts, all other debit and credit instruments or slips, currency transaction reports, 1099 forms, and safe deposit box logs; and

E.      This Section VI shall apply to existing accounts and assets, assets deposited or accounts opened after the effective date of this Order, and any accounts or assets maintained, held or controlled three years prior to the effective date of this Order.  This Section VI shall not prohibit transfers in accordance with any other provision of this Order, any further order of the Court, or by written agreement of the parties.

**VII.    <u>MAINTAIN RECORDS AND REPORT NEW BUSINESS ACTIVITY</u>**

IT IS FURTHER ORDERED that Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A.      Failing to create and maintain books, records, accounts, bank statements, current accountants' reports, general ledgers, general journals, cash receipt ledgers, cash disbursement ledgers and source documents, documents indicating title to real or personal property, and any other data which, in reasonable detail, accurately, fairly and completely reflect the incomes, disbursements, transactions, dispositions, and uses of the Defendants' assets;

B.      Destroying, erasing, mutilating, concealing, altering, transferring, or otherwise disposing of, in any manner, directly or indirectly, any documents, including electronically-stored materials, that relate in any way to the business practices or business or

-12-

personal finances of Defendants; to the business practices or finances of entities directly or indirectly under the control of Defendants; or to the business practices or finances of entities directly or indirectly under common control with any other Defendant; and

C. Creating, operating, or exercising any control over any new business entity, whether newly formed or previously inactive, including any partnership, limited partnership, joint venture, sole proprietorship, or corporation, without first providing Plaintiff with a written statement disclosing: (1) the name of the business entity; (2) the address, telephone number, email address, and website address of the business entity; (3) the names of the business entity's officers, directors, principals, managers, and employees; and (4) a detailed description of the business entity's intended activities.

## VIII. PROHIBITION ON DISCLOSING CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendants and their officers, agents, servants, employees, attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division, or other device, are hereby restrained and enjoined from:

A. Selling, renting, leasing, transferring, or otherwise disclosing the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiff's Complaint; and

B. Benefitting from or using the name, address, birth date, telephone number, email address, Social Security number, Social Insurance number, credit card number, bank account number, or other financial or identifying personal information of any person from whom or about whom any Defendant obtained such information in connection with activities alleged in Plaintiff's Complaint.

1   *Provided, however*, that Defendants may disclose such financial or identifying

2   personal information to a law enforcement agency or as required by any law, regulation, or

3   court order.

4   **IX.    FINANCIAL STATEMENTS**

5       IT IS FURTHER ORDERED that, unless previously submitted in full compliance

6   with the TRO or May 12, 2015 Preliminary Injunction, each Defendant shall serve upon

7   counsel for Plaintiff, no later than five (5) business days after entry of this Order, a

8   completed financial statement accurate as of the date of entry of this Order, on the forms

9   provided by Plaintiff for Individual Defendants and for Corporate Defendants, as the case

10  may be, signed under penalty of perjury.

11      The financial statements shall include assets held outside the territory of the United

12  States, shall be accurate as of the date of the entry of this Order, and shall be verified under

13  oath.  Defendants shall attach to these completed financial statements copies of all local,

14  state, provincial, and federal income and property tax returns, with attachments and

15  schedules, as called for by the instructions to the financial statements.

16  **X.     REPATRIATION OF ASSETS AND DOCUMENTS**

17      IT IS FURTHER ORDERED that Defendants shall:

18      A.     Unless previously completed in full compliance with the TRO or May 12,

19  2015 Preliminary Injunction, within three (3) business days following entry of this Order,

20  take such steps as are necessary to repatriate to the territory of the United States of America

21  all documents and assets that are located outside such territory and are held by or for

22  Defendants or are under Defendants' direct or indirect control, jointly, severally, or

23  individually;

24      B.     Unless previously completed in full compliance with the TRO or May 12,

25  2015 Preliminary Injunction, within three (3) business days following entry of this Order,

26  provide Plaintiff with a full accounting of all documents and assets that are located outside

27  of the territory of the United States of America or that have been transferred to the territory

28  of the United States of America pursuant to Subsection A above and are held by or for any

Defendant or are under any Defendant's direct or indirect control, jointly, severally, or individually, including the addresses and names of any foreign or domestic financial institution or other entity holding the documents and assets, along with the account numbers and balances;

C.     Hold and retain all such documents and assets and prevent any transfer, disposition, or dissipation whatsoever of any such documents or assets; and

D.     Unless previously completed in full compliance with the TRO or May 12, 2015 Preliminary Injunction, within three (3) business days following entry of this Order, provide Plaintiff access to Defendants' records and documents held by financial institutions or other entities outside the territory of the United States of America, by signing and delivering to Plaintiff's counsel the Consent to Release of Financial Records attached to this Order as Attachment A.

**XI.   INTERFERENCE WITH REPATRIATION**

IT IS FURTHER ORDERED that Defendants are hereby restrained and enjoined from taking any action, directly or indirectly, which may result in the encumbrance or dissipation of foreign assets, or in the hindrance of the repatriation required by the preceding Section X of this Order, including, but not limited to:

A.     Sending any statement, letter, facsimile, email or wire transmission, or telephoning or engaging in any other act, directly or indirectly, that results in a determination by a foreign trustee or other entity that a "duress" event has occurred under the terms of a foreign trust agreement, until such time that assets have been fully repatriated pursuant to the preceding Section of this Order; and

B.     Notifying any trustee, protector or other agent of any foreign trust or other related entities of either the existence of this Order, or of the fact that repatriation is required pursuant to a Court order, until such time as assets have been fully repatriated pursuant to the preceding Section of this Order.

## XII.   DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that Defendants shall immediately provide a copy of this Order to each of their corporations, subsidiaries, affiliates, divisions, directors, officers, agents, partners, successors, assigns, employees, attorneys, agents, representatives, sales entities, sales persons, telemarketers, independent contractors, and any other persons in active concert or participation with them.  Within five (5) calendar days following entry of this Order, each Defendant shall file with this Court and serve on Plaintiff, an affidavit identifying the names, titles, addresses, and telephone numbers of the persons that Defendants have served with a copy of this Order in compliance with this provision.

## XIII.  SERVICE OF THIS ORDER

IT IS FURTHER ORDERED that copies of this Order may be distributed by United States First Class Mail, overnight delivery, facsimile, electronic mail, or personally, by agents or employees of Plaintiff, by agents or employees of the Receiver, by any law enforcement agency, or by private process server, upon any person, financial institution, or other entity that may have possession or control of any property, property right, document, or asset of any Defendant, or that may be subject to any provision of this Order.  Service upon any branch or office of any financial institution or entity shall effect service upon the entire financial institution or entity.

## XIV.  CONSUMER REPORTING AGENCIES

IT IS FURTHER ORDERED that, pursuant to Section 604 of the Fair Credit Reporting Act, 15 U.S.C. § 1681b, any consumer reporting agency may furnish a consumer or credit report concerning any Defendant to Plaintiff.

## XV.   JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this matter for all purposes.

IT IS SO ORDERED, this 25th day of November, 2015

_____
Percy Anderson
UNITED STATES DISTRICT JUDGE

**ATTACHMENT A**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | CV 15-3107 PA (AJWx) |
| Plaintiff, | CONSENT TO RELEASE FINANCIAL INFORMATION |
| v. | |
| SALE SLASH, LLC, et al., | |
| Defendants. | |

I,_____, of_____ (city or province and country), do hereby direct any person, bank, savings and loan association, credit union, depository institution, finance company, commercial lending company, payment processor, payment processing entity, common carrier, customs broker, commercial mail receiving agency, mail holding and/or forwarding company, brokerage house, escrow agent, money market or mutual fund, title company, commodity trading company, or trustee, that holds, controls or maintains custody of assets, wherever located, that are owned or controlled by me, or any of the above Defendants, in whole or in part, or at which I, or any of the above Defendants, have an account of any kind upon which I am authorized to draw, and its officers, employees and agents, to disclose all information and deliver copies of all documents of every nature in its possession or control which relate to the said accounts to

-17-

any attorney for Plaintiffs, and to give evidence relevant thereto, in the above captioned

matter, <u>FTC v. Sale Slash, LLC, et al.</u>, now pending in the United States District Court for

the Central District of California, and this shall be irrevocable authority for so doing.  This

direction is intended to apply to the laws of countries other than the United States of

America which restrict or prohibit the disclosure of bank or other financial information

without the consent of the holder of the account, and shall be construed as consent with

respect thereto, and the same shall apply to any of the accounts for which I may be the

relevant principal.


Dated:_____, 2015


                                   _____

                                   [Signature]


                                   _____

                                   [Print Name]